# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DEON TURNER, JR., | Case No. 1:21-cv-01175-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| GIBSON, *et al.*, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM |
| Defendants. | |
| | (ECF No. 13) |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Steven Deon Turner, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint, filed on July 15, 2021, was screened and Plaintiff was granted leave to amend. Plaintiff was instructed to explain why he failed to exhaust his administrative remedies. Plaintiff's amended complaint, filed on September 2, 2021, is currently before the Court for screening.[1]   (Doc. 13.)

---

[1] Plaintiff initiated this action together with a second Plaintiff on July 15, 2021. By separate order, the Court directed this action to be severed and a separate action opened on behalf of Plaintiff Maurice Haskell.

1

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at California Substance Abuse Treatment Facility ("SATF"), in Corcoran, California. Plaintiff alleges the events at issue occurred at SATF and at "CCI," California Correctional Institution. Plaintiff names as defendants: (1) Terressa Cisneros, Warden of SATF, (2) Connie Gibson, Director of California Department of Corrections and Rehabilitation ("CDCR"); and (3) CDCR (ECF No. 13 p. 5.). Plaintiff is suing each defendant in his/her individual capacities.

Explanation of Failure to Exhaust

Plaintiff alleges a failure to protect under the Eighth Amendment. Plaintiff alleges he is

serving an unlawful sentence in CDCR. Plaintiff alleges at "all times relevant in this complaint, the Plaintiff was housed throughout CDCR, in different prisons, that gave rise to the issues and claims, that are in this complaint."

Plaintiff alleges that prison violence and predatory behavior by Security Threat Group/gang members ("STG") towards gang dropouts and others "is a well-hidden calamity by the Defendants" that is growing in scale. The only way to keep Plaintiff safe from foreseeable harm is immediate separation from STGs so he can do the rest of his time in peace. Plaintiff alleges that waiting 4 months for the adjudication of a 602 appeal would put Plaintiff's life at great risk of being attacked again.

Defendant Terressa Cisneros intends to send Plaintiff to a 180-270 yard, knowing that those yards are infested with STGs. Plaintiff did not exhaust administrative remedies because he feared that waiting to do so will lead him to being placed around STGs. If it takes 2 weeks to exhaust a complaint and complainant is in danger of being killed tomorrow, there is no possibility for relief. CDCR administrative remedies can take over 120 days. Even an emergency appeal can take 2 months to exhaust.

Allegations

Plaintiff alleges that Defendants CDCR, Gibson and Cisneros have a mandated duty to protect all persons in their custody. Between 2018 and to the present, CDCR and Gibson are responsible for implementing new policy that replaces Security Needs Yard ("SNY") with no designated programming facilities ("NDPF"). CDCR and Gibson justified elimination of SNY facilities with implausible assertion that NDPF will produce expanded access to rehabilitation opportunities. Access to rehabilitation programs does not justify failing to protect or justify exposing groups to foreseeable harms.

Twelve years ago, CDCR established SNY yards to stem the tide of violence and predatory behavior towards specific groups of people known to be at risk, such as dropouts like Plaintiff. CDCR established SNY classification and SNY facilities to protect the targeted groups from foreseeable harm.

Plaintiff alleges that CDCR and Gibson have failed in their obligations and duties to

protect Plaintiff and all other targeted inmates from foreseeable harm by allowing STG gang members on the SNY "side" and manifest themselves under the SNY chrono/contract.

Plaintiff signed an "SNY" chrono/contract between 2010 and 1011 to not participate in gang activity and in return Defendant would protect Plaintiff from gang members. CDCR and Connie Gipson breach the SNY chrono/contact and its policy because they continue to allow plaintiff and other to be targeted or housed with gang members. This is cruel and unusual and exposed them to "high risk" of foreseeable harm. This is violation of Eighth and Fourteenth Amendments to expose Plaintiff to harm and possible death by the policy by replacing SNY designations with NDPF policy. This deprives Plaintiff of minimal civilized measure of safety.

Plaintiff alleges that on March 25, 2020, at CCI, Facility B, a STG/gang riot too place involving over 60 inmates. Plaintiff did not participate in the riot, upholding his portion of the contract. In December 2020, Plaintiff was approached by black gang members asking him to explain why he did not get involve in the march 25, 2020 riot and help the black STG/gang members. Plaintiff told them that he did not participate because he is not a gang member, is Muslim.

On December 5, 2020, at CCI B-yard, Building 2, Plaintiff was attacked for not participating in the March 25, 2020 riot by another black who participated in the riot. Plaintiff informed CCI administration of safety and security issues with STG/Gang members and CCI transferred Plaintiff to STAF on January 26, 2021. Twente to thirty STG/Gang members were placed in the custody of Defendant Terressa Cisneros and were housed in Facility D, 3-block in SATF. On May 28, 2021 at about 9:45 a.m., Lieutenant Lunes called Plaintiff to his office to discuss why he was still on a hunger strike. Plaintiff said he was not compatible with his current cellie. Lt. Lunes said that he would be moving Plaintiff to 3 Block. Plaintiff told Lt. Lunes that he did not want to be housed with gang members. When Plaintiff went back into the building, Plaintiff told Correctional Officer Sullenburg that he was not compatible with his current cellie and that he would not go back into cell 105. Plaintiff was escorted to a holding cage in program office, while Captain Gonzales Cisneros had a meeting.

On May 28, Plaintiff was rehoused in 3-block, cell 148, with STG/gang members, some of

whom had come from CCI and had participated in the March 25, 2020 riot. As soon as Plaintiff was recognized, he was told by the black STG/gang member who had started the March 25, 2020 STG/gang riot at CCI, "either leave this yard, or we about to kill you." Plaintiff, "in fear for his live, a manufactured prison weapon was produced under duress and necessity." (Doc. 13, ¶30.) He was surrounded by STG/gang members. Plaintiff believes he would have been killed even with a weapon. On June 4, 2021, after dayroom, Plaintiff notified the floor officers about his safety concerns.

Lt. Ervin came to Plaintiff's cell, cuffed him up, and escorted Plaintiff out of the building. When Lt. Ervin asked Plaintiff what was going on, Plaintiff told Lt. Ervin his safety concerns and that he would give the weapon he had for his safety to Lt. Ervin, which Plaintiff did.

Plaintiff alleges that Defendant Terressa Cisneros had a duty and obligation know or should have known of the three above mentioned threat to Plaintiff's life. Terressa Cisneros created the situation to have Plaintiff killed by deliberately housing him around STG/gang members. Plaintiff's life is in danger on any yard that allows STG/gang members to function and operate. Defendant Cisneros was deliberately indifferent to Plaintiff's right to be protected from constant threat of violence.

Plaintiff was written up for the march 25, 2020 riot, but was found not guilty based on video footage that showed Plaintiff did not participate.

As remedies, Plaintiff seeks a declaration of rights and a preliminary and permanent injunction to order Defendants Gibson and Cisneros to transfer Plaintiff to Mule Creek State Prison with no STG/gang members. Plaintiff also seeks punitive and compensatory damages.

### III. Discussion

#### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.; see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not short, and it is not a plain statement of his claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. Plaintiff's allegations must be based on facts as to what happened and not conclusions. As in the original complaint, it is unclear if Plaintiff is suing for the attack at CCI, for his housing assignment, for the SNY policy or for fear of being attacked, or something else. For instance, Plaintiff seeks an injunction to be moved to a specific institution and damages. It is unclear whether the damages are to compensate him for his fear for the injury or when he was attacked or his housing assignment. Plaintiff's complaint improperly reads like a laundry list of events that have occurred while he has been housed at CSATF and CCI. Further, as discussed below, Plaintiff has failed to limit his claims to those properly joined in a single action.

### B. Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); . Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff's complaint joins claims which are unrelated. The claim for the attack in December at CCI are unrelated to claims arising at SATF. Plaintiff may not bring allegations for different constitutional violations on later dates merely because he was assaulted in December 2020. Plaintiff may not bring claims arising at different institutions. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates

6

Federal Rules of Civil Procedure 18 and 20.

### C. Supervisor Liability

Insofar as Plaintiff is attempting to sue Defendant CDCR Director, the warden of SATF, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must... demonstrate that his deprivation resulted from an official policy or custom established by a... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's conclusory statements, without factual support, are insufficient to state a cognizable claim of supervisory liability. *See Iqbal*, 556 U.S. at 678. Plaintiff has failed to allege facts to support that any supervisory Defendant participated in or directed the violations, or knew

of the violations and failed to act to prevent them. Plaintiff also has failed to plead facts showing that any policy was a moving force behind the alleged constitutional violations. See *Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation.").

In this case, it appears Plaintiff alleges that Defendants, who are all supervisory officials, are liable in their individual capacities for violating his Eighth Amendment rights by implementing a policy that eliminates SNY prisoners at institutions where Plaintiff was housed at Plaintiff's former institution and his current institution.  However, first, Plaintiff has failed to allege facts demonstrating that the policy to eliminate the designation of SNY versus GP prisoners or NDPFs is itself a repudiation of Plaintiff's Eighth Amendment rights.

Second, Plaintiff has not alleged that the implemented NDPF policy resulted in a violation of his Eighth Amendment rights. Plaintiff's complaint does not contain any factual allegations asserting that he was or has been housed on a NDPF yard at either institution. Plaintiff does not that allege the housing assignment at either institution was the result of the NDPF policy.  Indeed, Plaintiff alleges he was rehoused after complaining about a noncompatible cellmate and after the December 2020 attach. Therefore, Plaintiff has not sufficiently pled a cognizable claim of supervisory liability based on a constitutionally deficient policy against Defendants Gibson or Cisneros.

### D. Eleventh Amendment Immunity

To the extent Plaintiff is seeking to sue CDCR, he is barred by the Eleventh Amendment. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The

Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittma*n, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity). As SATF is within CDCR and CDCR is a state agency, it is therefore immune from suit under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that Eleventh Amendment immunity extends to state agencies.)

### E. Failure to Protect

While the Eighth Amendment requires prison officials to provide prisoners with the basic human needs, including reasonable safety, it does not require that the prisoners be comfortable and provided with every amenity." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.1982). To establish a failure to protect claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). " 'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Plaintiff fails to state a claim against either Defendant Cisneros or Gibson for failure to protect him. Plaintiff has not stated facts showing that each defendant knew that Plaintiff was at substantial risk of harm, and yet deliberately ignored the risk and acted unreasonably. Plaintiff

has not shown that each defendant possessed the requisite state of mind to violate Plaintiff's rights under the Eighth Amendment. Plaintiff's conclusory allegations are insufficient. As stated above, Defendant Cisneros and Gibson cannot be responsible merely because they are supervisors.

To the extent Plaintiff is challenging the NDFS policy, plaintiff fails to state a claim. "'[A] [policy]...may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question.' " *Little v. Streater*, 452 U.S. 1, 16 (1981) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Thus, to support an "as applied" challenge, Plaintiff must show that his individual circumstances make the general application of the NDPF policy unconstitutional. *See Doe v. United States*, 419 F.3d 1056, 1063 (9th Cir. 2005).

Here, Plaintiff alleges that the implementation of the NDPF policy at CCI or SATF would place Plaintiff at serious risk of harm or injury, in violation of his right to be protected from violence and that Defendants Gibson or Cisneros are well aware of, and are completely disregarding, such an excessive risk to Plaintiff's health or safety. However, Plaintiff has not alleged any facts to support his conclusory allegation that implementation of the NDPF policy would place Plaintiff at serious risk of harm or injury. In fact, Plaintiff does not allege that he was ever housed on an NDPF yard. While Plaintiff alleges that he had known enemies, and that he was threatened with an assault by STG/gang members, he also alleges that whenever he made his safety concerns known, he was moved or rehoused. Therefore, Plaintiff has not sufficiently pled that he has been incarcerated under conditions posing a substantial risk of serious harm because "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future health." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007).

Further, Plaintiff's allegation that Defendants Gibson and Cisneros were well aware of, and are completely disregarding, the excessive risk to Plaintiff's health and safety is also a conclusory statement unsupported by any facts. Plaintiff has not alleged facts showing that he told Defendants Gibson and Cisneros or that each of the Defendants was aware of, a non-speculative, specific risk to Plaintiff's health and safety. Therefore, Plaintiff has not adequately pled that

Defendants Gibson and Cisneros knew of and disregarded an excessive risk of serious harm to Plaintiff's health and/or safety. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) ("The [deliberate indifference] standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.").

Accordingly, Plaintiff has not pled a cognizable claim against Defendants Gibson and Cisneros, in their individual capacities, that, as applied to Plaintiff, the NDPF policy is invalid under the Eighth Amendment, if that is what he is alleging.

### F. Transfer to Preferred Institution/Housing Assignment

Any claim premised on the Defendants' alleged failure to house Plaintiff at a particular institution or in particular housing fails because Plaintiff is not entitled to be transferred to any particular prison or to be housed in any particular housing. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. *Montayne v. Haymes*, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.); *accord King v. Lemos*, No. 1:20-CV-01837 NONE BAM(PC), 2021 WL 2038187, at *6 (E.D. Cal. May 21, 2021).

### G. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a

verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### H. Injunctive Relief

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.*

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Refugees v. I.N.S., Central American,* 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

Plaintiff seeks an injunction to transfer him to a specific institution. Plaintiff does not have a constitutional right to be housed in any particular institution. Therefore, he does not seek an injunction to protect a constitutional right.

### I. State Law Claim

Plaintiff may be seeking to allege state law claims against Defendants.

Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. Plaintiff has failed to state a cognizable federal claim.

## IV. Conclusion and Recommendation

Plaintiff's amended complaint fails to state a cognizable federal claim for relief. Despite being provided with relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies in his complaint by amendment, and thus further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the

////

////

////

////

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 8, 2021**         /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE